IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JOHN DOES 1 THROUGH 7, | |
| *Plaintiffs,* | |
| v. | Case No.: 3:20-mc-00206-FDW-DSC |
| THE TALIBAN, AL-QAEDA, and THE HAQQANI NETWORK, | |
| *Defendants.* | |

## MOTION FOR RELEASE OF FUNDS HELD BY BANK OF AMERICA, N.A.

Plaintiffs, John Does 1 through 7, pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA") and Fed. R. Civ. P. 69, hereby move for an order compelling Bank of America, N.A. ("Bank of America"), to turn over certain funds that are now in its possession. The funds to be executed upon are secured by three Writs of Execution issued on May 3, 2021 to enforce the Default Final Judgment registered by this Court on January 20, 2021. [DE 2].

### INTRODUCTION

1. On November 5, 2020, Plaintiffs obtained a Judgment in the United States District Court for the Northern District of Texas against The Taliban, Al-Qaeda, and The Haqqani Network for an amount totaling One Hundred Thirty-Eight Million Four Hundred Eighteen Thousand Seven Hundred Forty-One Dollars and zero cents ($138,418,741) in compensatory damages, jointly and severally for an act of terrorism committed by the Judgment Debtors.

2. The Judgment was obtained pursuant to a civil action brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 (hereinafter "ATA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b) (hereinafter "RICO").

3. On January 20, 2021, Plaintiffs registered the Judgment in this Court.

4. Plaintiffs do not believe that the Defendants have in their possession visible property on which levy can be made sufficiently to satisfy said Judgment. The Plaintiffs move for an Order to be issued against Bank of America, which has indicated in response to a subpoena issued on November 25, 2020, that it has in its possession or control blocked funds belonging to Waldemar Lorenzana Lima. As will be shown herein, Waldemar Lorenzana Lima is an agency or instrumentality of a terrorist party Defendant subject to execution pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA").

5. As is explained more fully below, Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA"), provides the federal statutory procedure for the enforcement of judgments against terrorist organizations such as the Taliban, Al-Qaeda, and the Haqqani Network, and for executing on any blocked assets of such terrorist organizations, their members, **or any entity or person who is their agency or instrumentality**:

> SEC. 201. SATISFACTION OF JUDGMENTS FROM BLOCKED ASSETS OF TERRORISTS, TERRORIST ORGANIZATIONS, AND STATE SPONSORS OF TERRORISM.
> (a) IN GENERAL- Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2333; 28 U.S.C. § 1610 note.

6. Plaintiffs have obtained the Judgment against the Taliban, Al-Qaeda, and the Haqqani Network, each of which is a "terrorist party" as defined by Section 201(d)(4) of the TRIA on a claim for which they are not immune under section 1605(a)(7) of title 28, United States Code, *i.e.*, the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs seek to enforce the Judgment against the "blocked assets" of agencies or instrumentalities of one or all of the Defendants. As will be shown herein, the agent or instrumentality of the terrorist party that is the subject of this motion has been designated by Department of Treasury's Office of Foreign Assets Control ("OFAC") as a Specially Designated Narcotics Trafficker Kingpin ("SDNTK").

7. Through its designations of individuals as SDNTKs, and through organization charts it publishes, the U.S. Department of Treasury, working in conjunction with other agencies, including, *inter alia*, the Department of Justice, regularly identifies individuals and organizations involved in the narcotics trade, and chronicles the connections between the various members in international narcotics trade. This motion will rely on those official OFAC designations and publications, as well as on the expert testimony of Brian Fonseca ("Fonseca")[1] whose sworn

---

[1] Mr. Fonseca currently serves as the director of the Institute for Public Policy at Florida International University's Steven J. Green School of International and Public Affairs. He also serves as an adjunct professor in the Latin American and Caribbean Studies Center and the Department of Politics and International Relations. Florida International University (FIU) designated him as expert on Latin American security. From 2007-2011, Mr. Fonseca led a U.S. Department of Defense security analysis program based at FIU. In that program, he spearheaded two seminal studies on Islam and Latin America. The first, titled *Muslim Identities in Latin America,* focused on understanding the history and composition of Muslim communities throughout Latin America, from the tri-border area to Ecuador, Chile, Colombia, Central America, Cuba, and the English-speaking Caribbean (Jamaica and Trinidad and Tobago). The
3
Case 3:20-mc-00206-FDW-DSC   Document 10   Filed 08/10/21   Page 3 of 17

testimony is attached as Exhibit A, in order to show that the targets of this motion are the agents or instrumentalities of the Judgment Debtor terrorist organizations, and thus that their blocked assets are subject to execution or attachment in aid of execution.

### I. Jurisdiction and applicable law

This Court has subject matter jurisdiction over Plaintiffs' post-judgment execution proceedings pursuant to 28 U.S.C. § 1331. The question of execution against accounts blocked pursuant to OFAC designations in order to collect a judgment against designated terrorist parties under Section 201 of TRIA is a federal question. *See Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 50 (2d Cir. 2010). According to Fed. R. Civ. P. 69, "[a] money judgment is enforced by writ of execution …" and "[t]he procedure on execution – and in proceedings supplementary to

---

second study, titled *Middle East—Latin American Relations,* examined the economic, security, cultural, and political ties between the various Middle Eastern and Latin American countries. In 2009, he authored a study titled *Human Smuggling and the Terrorist-Criminal Nexus*. In that study, he developed a new analytic framework to study the convergence or nexus of terrorist and criminal organizations. Additionally, he has served in the U.S. intelligence community from 2011-2013 in support of the Defense Intelligence Agency enterprise at United States Southern Command (USSOUTHCOM). He has also served in the United States Marine Corps Reserves from 1997-2005. Mr. Fonseca has spent more than a decade studying politics and security in Latin America with a focus on Colombia and Venezuela, and has routinely engaged the media and provided expert analysis at conferences around the world. Furthermore, since 2010, he has taught courses on the politics and international relations of Latin America, with elements focusing on transnational organized crime. He also routinely provides analytic support to the Departments of Defense and State on security in Venezuela and frequently appears on BBC Worlds News, CNN, Univision, CBS, and has been cited by the Washington Post, Bloomberg, NBC, and various other national and international media outlets. Most recently, on March 3, 2021, Mr. Fonseca testified before the United States Congress, House Foreign Affairs Committee about the crisis in Venezuela and the role of Russia, China, and others external state and non-state actors in Venezuela.

and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Thus, North Carolina law provides the applicable procedure, while federal law supplies the substantive rights.

II. **All requirements under North Carolina post-judgment execution statutes have been satisfied, and the TRIA requirements have been satisfied.**

    A. **North Carolina post judgment execution statutes have been satisfied.**

According to North Carolina law, the ordinary process to enforce a judgment is that of execution against the property of the debtor. *See* N.C. Gen. Stat. § 1- 302 (where a judgment requires the payment of money or the delivery of real or personal property it may be enforced in those respects by execution.); *see also*, *Vegelahn v. Smith*, 95 N.C. 254 (1886).

In the instant case, Plaintiffs obtained from this Court an Order for Final Execution and three Writs of Execution on May 3, 2021. [DE 6-9]. The Order provides that "[p]ursuant to TRIA, Judgment Debtors' blocked assets, including the blocked assets of *any agency or instrumentality* of a Judgment Debtor, are subject to execution or levy to satisfy the Judgment in this case." [DE 6] (emphasis added). The Executions specifically command the U.S. Marshal to satisfy the Judgment: " [o]ut of the property listed below which is excepted by law from the exemptions: [f]rom the blocked assets of the judgment debtor and *its agencies and/or instrumentalities*, as those terms are defined in the Terrorism Risk Insurance Act." [DE 7-9] (emphasis added).

Where it appears, in proceedings supplementary to execution, that a third person has funds of the defendant available for the judgment debt, an order may be made by the court forbidding such third persons to dispose of the funds. *See Boseman v. McGill*, 184 N.C. 215, 114 (1922). One frequently successful option for catalyzing Plaintiff's judgment into currency is a

5
Case 3:20-mc-00206-FDW-DSC   Document 10   Filed 08/10/21   Page 5 of 17

post-judgment levy on funds in the debtor's bank account. Section 1-360 of North Carolina General Statutes provides that "debtors of the judgment debtor may be summoned."

### B. TRIA provides for execution against the blocked assets of non-party agents and instrumentalities of terrorist party judgment debtors.

#### 1. Nonparties' assets are subject to execution.

TRIA allows for execution on the blocked assets of a terrorist party, or its agents or instrumentalities, to satisfy a judgment against the terrorist party. It leaves no doubt that the agents or instrumentalities need not be a named defendant. "[B]y its terms § 201 provides that the blocked assets that may be executed upon are those of either the 'terrorist party' or 'any agency or instrumentality of that terrorist party,' even though the judgment itself need be only against the terrorist party." *Weininger,* 462 F. Supp. 2d. at 479. The Second Circuit Court of Appeals held that: "[a]ccordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post- judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, ***even if the instrumentality is not itself named in the judgment.***" *Id*. at 50 (emphasis supplied). *Weinstein*, 609 F.3d at 50; *see also Ungar v. The Palestinian Authority*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004) (HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).

#### 2. The four requirements of the TRIA.

The execution may be made, provided that the following requirements are met:

(1) a person has obtained a judgment against a terrorist party;
(2) the judgment is either
  (a) for a claim based on an act of terrorism, or
  (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);
(3) the assets are "blocked assets" within the meaning of TRIA; and
(4) execution is sought only to the extent of any compensatory damages.

6

*See Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006); TRIA, Pub. L. No. 107-297, 116 Stat. 2322. Plaintiffs meet all four requirements.

### a. The Plaintiffs have a judgment against terrorist parties.

Plaintiffs have a federal district court judgment against the Taliban, Al-Qaeda, and the Haqqani Network, each of which is a "terrorist party". On July 2, 2002, George W. Bush designated the Taliban as a Specially Designated Global Terrorist pursuant to Executive Order 13268, https://fas.org/irp/offdocs/eo/eo-13268.htm. On October 8, 1999, the U.S. Department of State designated Al-Qaeda as a Foreign Terrorist Organization pursuant to Title 8 U.S.C. § 1189, U.S. Dept. of State, Office of the Coordinator for Counterterrorism, https://www.state.gov/foreign-terrorist-organizations/. On September 19, 2012, the U.S. Department of State designated The Haqqani Network as a Foreign Terrorist Organization pursuant to Title 8 U.S.C. § 1189, U.S. Dept. of State, Office of the Coordinator for Counterterrorism, https://www.state.gov/foreign-terrorist-organizations/.

Congress specifically defined the term "terrorist party" in Section 201(d) of the TRIA to include both a "terrorist organization" and a "foreign state designated as a state sponsor of terrorism":

> (4) TERRORIST PARTY- The term 'terrorist party' means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

This definition includes the Taliban, Al-Qaeda, and the Haqqani Network.

### b. The judgment is for a claim for an act of terrorism.

The judgment awarded pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333, is undeniably for an "act of terrorism". Thus, the second TRIA requirement is met.

7

### c. The assets are "blocked assets" within the meaning of TRIA.

The assets at issue are "blocked assets". As the Anti-Terrorism Clarification Act of 2018 provides:

> For purposes of section 201 of the Terrorism Risk Insurance Act of 2002 (28 U.S.C. 1610 note), in any action in which a national of the United States has obtained a judgment against a terrorist party pursuant to this section, the term "blocked asset" shall include any asset of that terrorist party (including the blocked assets of any agency or instrumentality of that party) seized or frozen by the United States under section 805(b) of the Foreign Narcotics Kingpin Designation Act (21 U.S.C. 1904(b)).".

115 P.L. 253, 132 Stat. 3183, 2018 Enacted S. 2946, 115 Enacted S. 2946. As will be shown more fully below, the assets at issue here were frozen by the United States under section 805(b) of the Foreign Narcotics Kingpin Designation Act. Thus, the assets are clearly "blocked assets" subject to execution.

Further, for the account Plaintiffs seeks to levy, OFAC has made a "factual determination" in its designation that these blocked assets belong to an individual who is an SDNTK. Weinstein, 609 F.3d at 50 (OFAC designation is "factual determination" and allows court to exercise subject matter jurisdiction). OFAC's decisions are entitled to great deference. *See De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) (OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."); *Consarc Corp. v. OFAC*, 71 F.3d 909, 914-15 (D.D.C. 1995); *Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury*, 750 F.Supp.2d 150 (D.D.C. 2010)(OFAC regulations carry the force of law); *see also* 31 C.F.R. §538.802.

### d. Execution is sought only to the extent of any compensatory damages.

The portion of Plaintiff's Judgment for compensatory damages, One Hundred Thirty-Eight Million Four Hundred Eighteen Thousand Seven Hundred Forty-One Dollars and zero cents ($138,418,741), is completely unsatisfied and is owed jointly and severally by the Judgment Defendants. Execution is sought only to the extent of this compensatory award.

### c. Notice has been provided to the account holder; no further notice to the Judgment Debtors is required or practical

North Carolina general statutes direct a judgment creditor to give notice to the debtor prior to obtaining a writ of execution. However, in the instant case, Plaintiffs established service of process on all three Judgment Debtors via publication, but all three failed to appear and were adjudged to be in default in the Northern District of Texas in case number 4:20-cv-00605. That default judgment was then domesticated in this district. Pursuant to Federal Rule of Civil Procedure 5(a)(2), if no new claim is being asserted, no service is required on a party who is in default for failing to appear. Likewise, the North Carolina Rules of Civil Procedure provide that "no service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4". N.C. Gen. Stat. § 1A-1, Rule 5. Further, the Judgment Debtors, as foreign terrorist organizations, are not amenable to service. And, the Judgment Debtors, in this TRIA collection, are not the account holders. For all these reasons, no further service on them is required or practical.

As previously stated, Section 1-360 of North Carolina General Statutes provides that "debtors of the judgment debtor may be summoned," and that the court or judge may "by order, require such person or corporation, or any officer or members thereof, to appear at a specified time and place, and answer concerning the same; provided, however, that such inquiries may, in the

discretion of the court, be answered by such person or corporation, or any officers or members thereof, by verified answers to interrogatories. The court or judge may also, in its or his discretion, require notice of the proceeding to be given to any party to the action, in such manner as seems proper." After it is determined that the debtor of the judgment debtor is in possession of unencumbered property of such judgment debtor or is indebted to him in an amount exceeding ten dollars ($10.00), an execution shall issue against the property or debt of the judgment debtor that the debtor of the judgment debtor acknowledged he holds.

While no statute compels Plaintiffs to notice the agency or instrumentality of a judgment debtor (in this case, Waldemar Lorenzana Lima), or third party debtors of that agency or instrumentality (Ayco Farms and Bank of America), Plaintiffs, in an abundance of caution have provided notice to all three. On July 23, 2021, counsel for Bank of America confirmed receipt of a notice letter and service of the writs. *See* Exhibit B. On August 3, 2021, a copy of the notice letter addressed to Bank of America and the writs were sent via e-mail to a representative for Ayco Farms at ap@aycofarms.com. *See* Exhibit C. And, notice to Waldemar Lorenzana Lima was sent via U.S. mail to Rivers Correctional Facility on August 5, 2021. *See* Exhibit D.

### D. No OFAC license is required prior to execution.

TRIA was intended to clear the way for victims of terrorist organizations to collect on them without delay or interference from the Executive Branch. Its purpose "is to deal comprehensively with the problem of enforcement of judgments issued to victims of terrorism in any U.S. court by enabling them to satisfy such judgments from the frozen assets of terrorist parties . . . ." *Weinstein*, 609 F.3d at 50 (quoting Senator Harkin a sponsor of the TRIA 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002)). The TRIA "establishes once and for all, that such judgments are to be enforced against any assets available in the U.S., and that the executive

branch has no statutory authority to defeat such enforcement under standard judicial processes, except as expressly provided in this act." *Id.* Thus, no OFAC license is required for Plaintiffs to execute on and take possession of the blocked proceeds under the TRIA, which it has recognized in similar cases. *See Castro*, 462 F. Supp. at 499. (U.S. DOJ has indicated that "[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the Office of Foreign Assets Control").

This motion now turns to the specific asset at issue.

### III. The asset sought to be levied is a blocked asset of an agency or instrumentality of the Taliban, Al-Qaeda, and/or the Haqqani Network.

On January 28, 2021, Plaintiffs obtained a subpoena response from Bank of America identifying the existence of OFAC blocked funds belonging to Waldemar Lorenzana Lima that were proceeds of a sale of produce to Ayco Farms, Inc., in the amount of $362,298.63. *See* Exhibit E. On November 14, 2012, Waldemar Lorenzana Lima was listed as an SDNTK pursuant to Section 1904(b) of The Foreign Narcotics Kingpin Designation Act (21 U.S.C. 1901-1908). *See* Federal Register, Volume 75, Issue 126. According to the U.S. Department of Treasury, for years, Waldemar Lorenzana Lima used his businesses and agricultural holdings in La Reforma, Zacapa, Guatemala as a front for the northbound movement of drugs through Guatemala. The blocked assets of Waldemar Lorenzana Lima held at Ayco Farms' bank account at Bank of America, are thus "blocked assets" within the meaning of the TRIA.

Interdiction efforts have made it more difficult for Latin American cartels and Colombian Guerilla to send cocaine straight from Colombia and other Andean producer nations to the United States and Europe. In order to circumvent this problem, criminal organizations in the west, such as the FARC, are enlisting the help of Al-Qaeda and other branded terrorists to reach

their markets. According to Fonseca, South American and Middle Eastern terrorist and narco-terrorist groups have formed an alliance in the form of an interconnected illicit trafficking and money laundering network in which each actor plays an instrumental role that aids and abets the activities of the others. Fonseca Aff. at par 1. In other words, overlapping interests tie the Middle Eastern terrorist networks and South American narco-terrorist and money laundering organizations. *Id.*

According to the U.S. Department of Treasury, the Lorenzana family plays a key role in facilitating cocaine trafficking between Colombia and Mexico. Through their connections with Colombian sources of supply, they utilize their home country of Guatemala as a staging point for cocaine trans-shipments. Once the cocaine arrives in Guatemala, the Lorenzanas work with the Sinaloa Cartel to traffic cocaine into Mexico and, eventually, the United States. In the instant case, through both money laundering and trafficking activities, Waldemar Lorenzana Lima provided instrumental assistance that strengthened Colombian and Mexican drug organizations, as well as Hezbollah. Fonseca Aff. at par 1. Groups such as Hezbollah, which is linked to Iran, Al Qaeda, the Taliban, and the Haqqani network depend on financial schemes that take place in Latin America where trafficking operations and illicit trafficking thrives. *Id.*

Fonseca affirms that in February 2020, Waldemar Lorenzana-Lima was sentence to 23 years in prison by U.S. District of Columbia for his involvement in international drug trafficking. According to the U.S. Department of Treasury's Office of Foreign Asset Control, Waldemar Lorenzana-Lima was designated as a Specially Designated Narcotics Trafficker Kingpin for his role in international narcotics trafficking and their ties to the Sinaloa Cartel. U.S. Department of Treasury evidenced that Waldemar Lorenzana Lima used his businesses in Guatemala as a front for the illicit trafficking flow of drugs moving north into the U.S. *Id*. at par 50.

The Sinaloa cartel, which has played and continues to play a role in this larger global illicit trafficking network, has direct links to the FARC, Hezbollah, Iran, Al Qaeda, the Haqqani Network, and the Taliban. *Id*. at par 1. Furthermore, the Sinaloa Cartel has played and continues to play a significant role in bolstering Colombian, Mexican, and Middle Eastern armed groups and rogue states involved in illicit activity and terrorism. *Id*. According to Fonseca:

> 40. [T]he FARC, Sinaloa Cartel, and Afghan drug traffickers comprise a common and likely interconnected illicit network. For example, Marlon Marin, nephew of FARC leader Jesus Santrich, asserts that FARC leaders Iván Márquez and Santrich sanctioned collaboration with the Mexico-based Sinaloa Cartel in global money laundering and drug trafficking operations. In January 2011, Mexican authorities reported that the Sinaloa cartel was working with other narcotics traffickers in Afghanistan. Insight Crime also reported on Sinaloa Cartel's drug trafficking operations in Afghanistan in 2011. According to the report, field research in Afghanistan conducted by crime analyst Edgardo Buscaglia revealed the Sinaloa Cartel's dealings with global criminal organizations in Afghanistan.

*Id*. at par 40.

Fonseca testifies that in 2015, the DEA provided evidence that the Sinaloa Cartel and the FARC created an alliance to transport cocaine. *Id*. at 46. Similarly, the FARC allied itself with Al Qaeda, the Taliban, and the Haqqani Network to achieve their mutual goals. *Id.* at 56. According to DEA director for the Andean region of South America, Jay Bergman, Al-Qaeda is funding itself in part by providing security for drug smugglers.[2] In an interview, Bergman said: "[a]s suggested by [a] recent arrest of three alleged al Qaeda operatives, the expansion of cocaine trafficking through West Africa has provided the

---

[2] Hugh Bronstein, *Colombian Rebels, al Qaeda in "unholy" drug alliance*, REUTERS (Aug. 4, 2021, 3:54 PM) https://www.reuters.com/article/us-drugs-colombia-qaeda-interview/colombia-rebels-al-qaeda-in-unholy-drug-alliance-idUKTRE6034L920100104.

13

venue for an unholy alliance between South American narco-terrorists and Islamic extremists."[3]

Additionally, Dr. Vanessa Neumann, formerly a senior fellow of the Foreign Policy Research Institute's Center for the Study of Terrorism, has long urged that Latin America is an increasing source of funding for Middle Eastern terrorism as it was inevitable that South American cocaine traffickers and narcoterrorists would become of increasing importance to Hezbollah and Al-Qaeda.[4] Dr. Neumann further states, "a greater portion of financing for Middle Eastern terrorist groups, including Hezbollah and Al Qaeda, is coming from Latin America, while they are also setting up training camps and recruiting centers throughout our continent, endangering American lives and interests globally."[5] According to Dr. Neumann, "The TBA [Tri-Border Area], South America's busiest contraband and smuggling center, has long been an ideal breeding ground for terrorist groups, including Islamic Jihad, Hezbollah and Al Qaeda—the latter since 1995 when Osama bin Laden and Khalid Sheikh Mohammad first visited."[6]

As such, South American and Middle Eastern terrorist and narco-terrorist groups have formed an alliance with regional money laundering organizations with global reach in the form of an illicit trafficking and money laundering network in which each actor plays an instrumental role that aids and abets the activities of the others. Fonseca Aff. at par 56. In the instant case, Waldemar Lorenzana Lima, played a crucial role in the larger global illicit trafficking network, aiding and abetting the Sinaloa Cartel, and as such, he is

---

[3] *Id.*

[4] Dr. Vanessa Neumann, *The New Nexus of Nacoterrorism: Hezbollah and Venezuela*, FOREIGN POLICY RESEARCH INSTITUTE (Aug 4, 2021, 3:46 PM), https://www.fpri.org/article/2011/12/the-new-nexus-of-narcoterrorism-hezbollah-and-venezuela/.

[5] *Id*.

[6] *Id*.

an agency and instrumentality of the FARC, Al Qaeda, the Taliban, and the Haqqani Network. *Id.*

IV. **Conclusion**

As has been shown herein, TRIA provides for execution against the blocked assets of non-party agents and instrumentalities of terrorist party judgment debtors without an OFAC license. Plaintiffs have obtained a judgment against three terrorist parties on a claim for an act of terrorism. Further, as has been shown herein, Bank of America holds assets, subject to an Order for Final Execution and three Writs of Execution against the Judgment debtors. [DE 6-9] The Order provides that "[p]ursuant to TRIA, Judgment Debtors' blocked assets, including the blocked assets of *any agency or instrumentality* of a Judgment Debtor, are subject to execution or levy to satisfy the Judgment in this case." [DE 6]. The Executions specifically command the U.S. Marshal to satisfy the Judgment: "Out of the property listed below which is excepted by law from the exemptions: From the blocked assets of the judgment debtor and *its agencies and/or instrumentalities*, as those terms are defined in the Terrorism Risk Insurance Act." [DE 7-9]. The assets held by Bank of America are "blocked assets" within the meaning of TRIA of parties that are the agents and/or instrumentalities of the Taliban, Al-Qaeda, and/or the Haqqani Network. Plaintiffs seek to execute on those assets, and execution is sought only to the extent of any compensatory damages. Finally, the Judgment Debtors defaulted and are not amenable to service, and Plaintiffs have provided notice to Bank of America, the account holder, Ayco Farms, and Mr. Lorenzana Lima, the blocked assets owner, at his last known address.

**WHEREFORE** Plaintiffs request entry of an order:

(i) declaring that the following SDNTK person or entity is an agency or instrumentality of the Taliban, Al-Qaeda and/or the Haqqani Network: Waldemar Lorenzana Lima;

(ii) declaring that the SDNTK person's or entity's blocked funds are subject to execution under the TRIA as a blocked asset of an agency or instrumentality of a terrorist party;

(iii) finding that Ayco Farms, Inc. has been given notice;

(iv) directing Bank of America to wire transfer (pursuant to wire instructions that Plaintiffs' counsel shall separately provide to counsel for Bank of America) to Plaintiff's counsel's trust account the Funds within five (5) business days from the date of the order;

(v) directing Plaintiffs and Plaintiffs' counsel to retain the Funds in partial satisfaction of Plaintiffs' judgment; and

(vi) finding that upon delivery of the funds to Plaintiffs' counsel in satisfaction of this Court's Order and Writs under the TRIA, Bank of America and Ayco Farms, Inc. will be released from any liability to the above named SDNTK, Plaintiffs and any third parties, and discharged and dismissed from this action for compliance with Orders from this Court.

A proposed order is attached hereto as Exhibit F.

Dated: August 10, 2021

Respectfully submitted,

**Winiker Law Firm, PLLC**
352 N. Caswell Road
Charlotte, North Carolina 28204
Telephone: (704) 333-8440
Facsimile: (704) 831-5274

By: s/ *S. Frederick Winiker, III*
S. Frederick Winiker, III
North Carolina Bar No. 22390
swiniker@winikerlaw.com

       **do Campo & Thornton, P.A.**
       Chase Bank Building
       150 S.E. 2nd Avenue, Ste. 602
       Miami, Florida 33131
       Telephone: (305) 358-6600
       Facsimile: (305) 358-6601

    By: s/ *John Thornton*
      John Thornton
      Florida Bar No. 004820
      jt@dandtlaw.com
      *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on August 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and a copy of the foregoing was mailed to: All counsel of record, Bank of America, NA 101 N. Tryon Street, Charlotte, NC 28202; Ayco Farms, Inc. 1501 NW 12th Avenue Pompano Beach, FL 33069; and Waldemar Lorenzana Lima Rivers Correctional Facility 145 Parker's Fishery Road, PO Box 840, Winton, NC 27986.

       s/ *John Thornton*
       John Thornton