**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

JOHN DOES 1 THROUGH 7,

   *Plaintiffs,*

v.

THE TALIBAN, AL-QAEDA,
 and THE HAQQANI NETWORK,

   *Defendants.*

CASE NO._____

## **COMPLAINT**

COMES NOW Plaintiffs, John Does 1 through 7[1], who bring this action within this Court's jurisdiction for damages caused by Defendants by international criminal actions in violation of the laws of the United States.

## **NATURE OF THE ACTION**

This is a civil action for damages arising from acts of international terrorism committed jointly by the Taliban, Al-Qaeda, and the Haqqani Network, in Afghanistan on January 4, 2016. On that day, terrorists rammed a truck full of explosives into the armored gates of Camp Sullivan, a compound for foreign and Afghan civilian contractors and detonated it. The blast created a 15-foot deep crater, smashed windows, sent glass and debris flying, damaged nearby

---

[1] Plaintiffs in this action are identified as "John Does 1 through 7". They suffered grave physical and psychological injuries as the result of an attack by terrorist organizations that are active world-wide. Their well-founded fears of reprisal are heightened by the psychological conditions they suffer as a result of the attack. In addition to fear of reprisal, they fear stigmatization if their psychological conditions were publicly identified.

1

camps, hotels, houses and vehicles, seriously wounded at least 30 civilians, including nine children and Does 1-7, among others, and killed at least two Afghan nationals.

## THE PARTIES

1.      Plaintiff John Doe 1 is a U.S. citizen residing in Silverdale, Washington who was injured by an act of terrorism occurring on January 4, 2016. John Doe 1 is a former Special Operations Consulting Mobil Team Commander. He was subcontracted by the State Department to direct logistics for convoys and was tasked with protecting compounds for intelligence agencies, such as the Control Intelligence Agency and National Security Agency.

2.      Plaintiff John Doe 2 is a U.S. citizen residing in Fresno, California who was injured by an act of terrorism occurring on January 4, 2016. John Doe 2 is a former armed security guard in Kabul Afghanistan, subcontracted by the State Department. He was placed in Afghanistan as an entry control point supervisor. He helped ensure third-party country nationals their safety. He conducted searches and perimeter watches of the compound.

3.      Plaintiff John Doe 3 is a U.S. citizen residing in Jonesborough, Tennessee who was injured by an act of terrorism occurring on January 4, 2016. John Doe 3 is a former security supervisor in Kabul Afghanistan, subcontracted by the State Department. His job was to train and advise Afghan security forces.

4.      Plaintiff John Doe 4 is a U.S. citizen residing in El Paso, Texas who was injured by an act of terrorism occurring on January 4, 2016. John Doe 4 is a former armed security guard in Kabul, Afghanistan, subcontracted by the State Department.

5.      Plaintiff John Doe 5 is a U.S. citizen residing in Euless, Texas who was injured by an act of terrorism occurring on January 4, 2016. John Doe 5 is a former site security manager in Kabul Afghanistan, subcontracted by the State Department.

6.      Plaintiff John Doe 6 is a U.S. citizen residing in Henderson, Nevada who was injured by an act of terrorism occurring on January 4, 2016. John Doe 6 is a former armed security guard in Kabul, Afghanistan, subcontracted by the State Department.

7.      Plaintiff John Doe 7 is a U.S. citizen residing in Randallstown, Maryland who was injured by an act of terrorism occurring on January 4, 2016. John Doe 7 is a former armed security guard in Kabul, Afghanistan, subcontracted by the State Department.

8.       Defendant, the Taliban, is a terrorist organization subject to the jurisdiction of this Court. The Taliban is a Sunni Islamist militant organization created in 1994. Its goal was to establish a strictly Shariah-governed Afghan state. It achieved this goal in 1996 and ruled Afghanistan as the main governmental body through 2001. The Taliban is currently headquartered and physically present in Afghanistan and is an Islamic fundamentalist movement. The Taliban is a Specially Designated Global Terrorist ("SDGT") organization pursuant to Executive Order 13268 issued on July 2002. It is described by the U.S. Department of Treasury Office of Foreign Assets Control in its Overview of Sanctions Regulations as "listed on the Office of Foreign Assets Control's list of 'Specially Designated Nationals and Blocked Persons.'" The Taliban is supported, controlled, funded, protected, aided, and abetted by Al-Qaeda and the Haqqani Network. At all material times, the Taliban, in concert with terrorist and terrorist groups in a criminal enterprise, engaged to enrich its own group. The Taliban solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for carrying out violent terrorists acts such as the attack on Plaintiffs and others similarly situated.

9.      Defendant, Al-Qaeda, is a foreign terrorist organization subject to the jurisdiction of this Court. Al-Qaeda is one of the longest-operating and largest jihadist militant organizations in the world. The group was founded by Osama bin Laden on August 11, 1988. Since then, it has

grown to become an organization with affiliated entities and supporters all over the world and has carried out some of the most violent and infamous attacks in the last twenty-five years. Al-Qaeda is a designated Foreign Terrorist Organization ("FTO") pursuant to 8 U.S.C. § 1189, designated on October 8, 1999. Al-Qaeda was originally organized by Osama Bin Laden in order to perpetrate acts of international terrorism and wage an Islamic jihad against the United States and others. Al-Qaeda is primarily headquartered in Afghanistan. It is supported, controlled, funded, protected, aided, and abetted by among others, the Taliban and the Haqqani Network. At all material times, Al-Qaeda, in concert with other terrorists and terrorist groups, engaged in a criminal enterprise to enrich itself and its allied terrorists groups. Al-Qaeda solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for carrying out violent terrorists acts such as the attack on Plaintiffs and others similarly situated.

10.     Defendant, the Haqqani Network, is a foreign terrorist organization subject to the jurisdiction of this Court. The Haqqani Network is a Sunni Islamic nationalist insurgent group that emerged in the early 1970s in Afghanistan. Throughout the 1980s, it played an increasingly important role in the emergence and growth of Al-Qaeda. The Haqqani Network also assisted the nascent Afghan Taliban. It was an integral actor in enabling the Quetta Shura[2] in the Taliban's broader organized violence. Between 1995 and 1996, the Haqqani Network pledged allegiance to the Taliban and supported it when it captured Kabul in 1996. The Haqqani Network is a designated FTO pursuant to 8 U.S.C. § 1189, designated on September 19, 2012. The Haqqani Network is an Afghan guerilla insurgent group using asymmetric warfare to fight against US-led NATO forces and the government of Afghanistan. The Haqqani Network pledged allegiance to

---

[2] The Quetta Shura is a militant organization which is composed of the leaders of the Afghan Taliban, and believed to be based, since about 2001, within the city of Quetta in the Balochistan province of Pakistan.

the Taliban in 1995 and has been an increasingly incorporated wing of the Taliban ever since, so much so that after the Obama administration labeled the network as an FTO, the Taliban issued a statement arguing that there is no separate entity or network, and calling it no different from the Taliban. The Haqqani Network is also affiliated with Al-Qaeda. According to U.S. Military Commanders, the Haqqani Network is the most resilient enemy network and one of the biggest threats to the U.S.-led NATO forces and the Afghan government. The Haqqani Network is supported, controlled, funded, protected, aided, and abetted by among others, the Taliban and Al-Qaeda. At all material times, the Haqqani Network, in concert with other terrorists and terrorist groups, engaged in a criminal enterprise designed to enrich itself, the Taliban, and Al-Qaeda. The Haqqani Network solicits and accepts money and other things of value from terrorists and terrorist groups in exchange for carrying out violent terrorist acts such as the attack on Plaintiffs and others similarly situated.

## JURISDICTION

11.     This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1961 *et seq*., and 18 U.S.C. § 2333(a).

12.     Pursuant to 18 U.S.C. § 2338, the district courts of the United States have exclusive jurisdiction over this action.

13.     Venue is proper where any Plaintiff resides pursuant to 18 U.S.C. § 2334(a), therefore venue is proper in this district because Plaintiff John Doe 5 resides in Euless, Texas. Defendants are all alien nationals and may be sued in any district pursuant to 28 U.S.C. § 1391(c)(3).

14.     This action does not allege any claims seeking imprisonment or criminal punishment against any defendant, nor does any defendant face any loss of liberty in this civil action, nor is

any defendant entitled to provision of counsel in this civil action under the Criminal Justice Act, 18 U.S.C. § 3006A, or the 6th Amendment to the U.S. Constitution.

## DEFENDANTS' PURPOSEFUL DIRECTION OF CRIMES AND TERROR AT U.S. CITIZENS

15.    The Taliban provided Bin Laden with safe haven starting in 1996, when Bin Laden first declared war on the United States. In Afghanistan, Al-Qaeda made connections with other jihadist movements, strengthened its finances, and planned terrorist attacks, while funding camps to train between 10,000 to 20,000 fighters between 1996 and 2001.

16.    On September 11, 2001, nineteen operatives highjacked four planes, crashing two into the World Trade Center buildings and one into the Pentagon, while the fourth crashed in a field in Pennsylvania.

17.    The 9/11 attacks brought Al-Qaeda and Islamist terrorism to the forefront of international security concerns.

18.    After the September 11, 2001 terrorist attack the American-led invasion pushed the Taliban regime out of power. Since then, the Taliban has actively fought to push the United States and NATO military forces out of Afghanistan and delegitimize the current government of Afghanistan.

19.    In order to finance their acts of terrorism, the Taliban engages in poppy production and the drug trade. They have also been known to supplement opium revenue with illegal timber trading, extortion, and lucrative mining operations. They illegally tax Afghan citizens who refuse to join the group and solicit donations from wealthy businessmen who support their cause.

20.    Al-Qaeda's dominant strategy since 2001 has been to encourage affiliate organizations to attack the West, sometimes with financial or operational support. These affiliate organizations

flocked to Al-Qaeda after 9/11; several groups either emerged or reoriented themselves to pledge allegiance to Bin Laden.

21.     The Haqqani Network pledged its allegiance by harboring Al-Qaeda members and targeting U.S. and NATO forces. The Haqqani Network has carried out some of the deadliest attacks in Afghanistan, including an attack against the American Embassy and NATO headquarters in Kabul in September 2011.

22.     Defendants use unconventional tactics to pursue their goals to push out the United States and NATO military forces out of Afghanistan and rid the Muslim world of western influence.

23.     For instance, the Haqqani Network is believed to have pioneered the use of suicide bombing in Afghanistan.

24.     Before 2004, suicide bombings were rare in Afghanistan. In 2004, there were just six such attacks committed by the Taliban. In 2005, the number more than tripled to 21 and in 2006, Afghanistan saw 141 suicide attacks, causing 1,166 casualties.

25.     To date, the Taliban continues to use suicide bombings, improvised explosive devices "IEDs" conventional warfare, unconventional warfare, rocket attacks, assassinations, guerilla warfare, massacres, kidnappings, targeting of civilians, and targeting of NGOs as part of their terrorist activities.

26.     Similarly, Al-Qaeda employs suicide bombings, IEDs, rocket and small arms attacks, grenades, kidnapping and hostage-taking, ransoming, hijacking, and propaganda to further its goals, both in the Middle East and around the globe. Al-Qaeda and its affiliates target the U.S. and Western presence and interests in the Middle East, as well as political figures and security forces that oppose Al-Qaeda.

27.     The Haqqani Network targets Western buildings and organizations, as well as institutions that sympathize with or support foreign officials. Past targets have included the Serena Hotel in Kabul, where the Norwegian Foreign Minister was reportedly meeting at the time of the attack; NATO convoys; the U.S. Embassy; and military bases throughout Afghanistan. Additionally, the Haqqani Network possesses highly advanced technological expertise, particularly related to bomb-making and remote detonation devices.

28.     Since 2001, the Haqqani Network has sought to drive the US-led coalition out of Afghanistan and reestablish Taliban rule in the country. In order to achieve this, the Haqqani Network employs complex, high-profile attacks in the form of suicide bombings, vehicle detonations, kidnappings, and beheadings of Western and Afghan hostages.

29.     While the Haqqani Network is largely responsible for the violence in Kabul and has conducted some of the most notorious attacks against the US-led coalition in Afghanistan, all Defendants work in concert with each other and with other foreign terrorist organizations to carry out their attacks.

30.     The Taliban and Al-Qaeda are reportedly the largest sources of military support for the Haqqani Network. The provision of militia, weapons, training, and finances from both the Taliban and Al-Qaeda has fueled the continuous growth of the Haqqani Network since the mid-1990s.

31.     In exchange, the Haqqani Network continues to provide protection and safe haven for Al-Qaeda, and the groups carry out attacks cooperatively.

32.     Much of the Taliban's, Al-Qaeda's and the Haqqani Network's finances come from poppy production and drug trade. According to a UN report, these groups produce and control

93% of the world's heroin. The drug trade is directed at Western markets, including the United States.

33.     Additionally, Defendants supplement their opium revenue with illegal timber trading, extortion and recently, have expanded their kidnap-for-ransom campaign of wealthy and influential Western hostages, including U.S. citizens, to financially support the network.

34.     As a result, since early 2016, Defendants have sharply escalated their attacks in Kabul, Afghanistan and other major urban areas, leaving thousands of civilians dead and injured. Suicide attacks, including car and truck bombings, caused at least one-third of these casualties. Hundreds have experienced sudden and terrifying violence. These efforts are directed at U.S. civilians working in the region.

35.     The families of those who perish at the hands of Defendants endure tremendous pain and suffering. Those who survive, like Plaintiffs, are frequently left with lasting and debilitating physical and psychological wounds.

## FACTUAL ALLEGATIONS SPECIFIC TO ALL PLAINTIFFS

36.     Plaintiffs John Does 1 through 7 were working in Kabul, Afghanistan as private contractors. The company they worked for had a contract with the State Department to provide security for its personnel.

37.     Plaintiffs were staying at Darya Village, a secure residential compound for foreign military and civilian contractors adjacent to Camp Sullivan[3] and located within the blast radius.

38.     On or about January 4, 2016, a suicide bomber in a truck packed with explosives detonated outside of the protected hotel compound, ripping a deep crater in the ground and leaving a tangle of wreckage.

---

[3] Camp Sullivan is a military camp.

39.     The truck contained approximately 3,000 lbs. of explosives and was intended for a convoy of U.S. Embassy guards who lived at Camp Sullivan.

40.     The attacker missed the convoy and detonated the explosives at the gate.

41.     The blast from the massive explosion had a 100-meter radius and caused a 15-foot deep crater outside of Darya Village.

42.     The Taliban took responsibility for the attack, claiming it was a "place of vulgarity and profanity" and that "foreign invaders must leave Afghanistan."

43.     Although the Taliban claimed the attack, Afghan and American officials suspect the Haqqani Network carried out the attack as the Haqqani Network has been known to carry out numerous attacks in the Taliban's name, awarding the latter credit for targeted strikes.

44.     As a result of the blast, John Does 1 through 7, who were within the proximity of the explosion, were gravely injured.

**COUNT ONE**
**(John Doe 1 against all Defendants)**
**18 U.S.C. § 2333**

45.     All prior paragraphs are incorporated herein.

46.     John Doe 1 is a U.S. national injured by reason of an act of international terrorism and seeks damages under 18 U.S.C. § 2333.

47.     John Doe 1 was victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1), which states:

"(1) the term "international terrorism" means activities that—

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or any State;

(B) appear to be intended—

> (i) to intimidate or coerce a civilian population;
> (ii) to influence the policy of a government by intimidation or
> coercion; or
> (iii) to affect the conduct of a government by mass destruction,
> assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States,
> or transcend national boundaries in terms of the means by which they are
> accomplished, the persons they appear intended to intimidate or coerce, or
> the locale in which their perpetrators operate or seek asylum."

48.    On January 4, 2016, John Doe 1 was sitting down in the cafeteria at Darya Village having

dinner when the vehicle-borne IED detonated.

49.    As a result of the explosion, John Doe 1 was thrown from his chair to the ground and

knocked unconscious, sustaining serious injuries to his lower back, thoracic region, neck, right

shoulder, and ears.

50.    Upon his return to the United States, John Doe 1was diagnosed with a right tympanic

membrane perforation with retained ventilation tube in the middle ear and left chronic otitis

media.

51.    John Doe 1 had to undergo surgery to correct the damage done to his ears and was given

hearing aids.

52.    An MRI of John Doe 1's lumbar spine showed lumbar spasms, a left-sided disk

herniation causing left lateral recess stenosis, displacement of the S1 nerve root, and left neural

foraminal stenosis.

53.    An MRI of John Doe 1's cervical spine showed a central disc protrusion extending to the

posterior aspect over the C3 vertebral body, an encroachment to the right C4 nerve root, and

right upper extremity radicular pain due to the cervical disc herniation on the right C4 nerve root.

54.    As a result of these findings and the severe back pain and discomfort John Doe 1 was

experiencing, he underwent spinal fusion surgery.

55.     In light of the fact that John Doe 1 was also suffering from insomnia, intrusive memories, nightmares, marked startled response, and disturbed sleep, he also began treatment with a licensed psychologist.

56.     As a result of the explosion, John Doe 1 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

57.     Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village with the express intent to coerce the civilian contractors housed there, constituting an act of international terrorism and causing substantial injuries to John Doe 1's person, property, and business.

58.     Defendant Taliban's material support and assistance to the Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

59.     Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

60.     Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

61.     Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

62.     Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

63.     Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

64.     As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 1, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

**COUNT TWO**
**(John Doe 2 against all Defendants)**
**18 U.S.C. § 2333**

65.     Paragraphs 1 through 44, 46 and 47 are incorporated herein.

66.     On January 4, 2016, John Doe 2 was in a briefing at Darya Village. He was seated with his back to the wall that received the initial impact from the explosion when the vehicle-borne IED detonated.

67.     The force of the explosion was so powerful that it threw John Doe 2 out of his chair, knocking him unconscious and causing him to sustain severe injuries to his head, lower back and right leg. Additionally, shattered glass from a window nearby cut John Doe 2's hands, causing significant bleeding.

68.     At first, John Doe 2 thought he was mortally wounded. He did survive and has been plagued with thoughts of "why me, why was I a victim of this, and why did I survive" ever since.

69.     Soon after the explosion, John Doe 2 began experiencing intense back pain, migraine headaches, memory loss, tinnitus to both ears, nightmares, and insomnia.

70.     Since John Doe 2 could no longer wear the heavy equipment he was required to wear for his job, he was removed from his duties, and was unable to continue working as a private contractor.

71.     Upon his return to the United States, John Doe 2 was diagnosed with tinnitus and hearing loss, aggravation of low back pain, post-traumatic migraine headaches, sleep and arousal disorder, and mood disorder with post-traumatic stress disorder.

72.     Following his trauma, John Doe 2 became guarded and fearful. He became very sensitive to sounds and has struggled in the workplace. When in a room, it is important for John Doe to always be facing a door and, to this day, John Doe 2 avoids fueling trucks as seeing these vehicles will cause him severe anxiety. John Doe 2 also avoids reminders of trauma such as movies or new programs depicting war.

73.     Additionally, John Doe 2's personality has changed. He is irritable, depressed and socially withdrawn. He experiences recurring nightmares of the explosion and intrusive recollections on a daily basis.

74.     As a result of the explosion, John Doe 2 has been left with severe limitations and restrictions precluding him from performing the job duties to which he was trained and was accustomed.

75.     Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 2's person, property, and business.

76.     Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

77.     Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

78.     Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

79.     Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

80.     Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

81.     Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

82.     As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of

international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 2, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

### COUNT THREE
**(John Doe 3 against all Defendants)**
**18 U.S.C. § 2333**

83.     Paragraphs 1 through 44, 46 and 47 are incorporated herein.

84.     On January 4, 2016, John Doe 3 was in a conference meeting with his project manager at Darya Village when the vehicle-borne IED detonated, throwing John Doe 3 from one side of the room to the other. He was knocked unconscious and a large shard of glass was lodged into his right flank.

85.     When he regained consciousness, John Doe 3 began hearing a lot of screaming. He had poor visibility as the power had gone off and it was extremely dusty. He thought it was the end of his life and for a moment, he just froze waiting for someone to start shooting at him.

86.     Eventually, John Doe 3 started crawling out of the room in an attempt to make it to a safe room. However, when he saw other people unconscious, he began to help them by pulling them out of that room and then proceeded to help the wounded.

87.     Once inside the safe room, John Doe 3 noticed he was experiencing a lot of pain on the right side of his body and lower back. He then noticed he had a large piece of shrapnel embedded above his right hip.

88.     John Doe 3 was sent home to the United States for treatment of his injuries. Upon arrival, he was diagnosed with significant lumbar strain, a lesion of the right ulnar nerve in his right elbow, ulnar neuritis, joint effusion with fluid tracking to the medial epicondyle, and increased intensity of the ulnar nerve. John Doe 3 is also suffering from right ulnar posttraumatic mononeuropathy, post concussive syndrome, and posttraumatic headaches.

89.     John Doe 3 further experienced anger issues and was self-medicating with alcohol before becoming aware that he was experiencing post-traumatic stress disorder. After John Doe 3's relationship ended with his significant other due to his anger issues, friends and family forced him into seeking treatment and he continues to engage in treatment.

90.      Despite attempts at treatment, John Doe 3 continues to suffer from lower back pain with right leg radiculopathy, right elbow pain, and post concussive symptoms, including but not limited to severe headaches, making it extremely difficult for him to tolerate even simple activities.

91.     As a result of the explosion, John Doe 3 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

92.     Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 3's person, property, and business.

93.     Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

94.     Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

95.     Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

96.     Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

97.     Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

98.     Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

99.     As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

        WHEREFORE, Plaintiff, John Doe 3, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

## COUNT FOUR
### (John Doe 4 against all Defendants)
### 18 U.S.C. § 2333

100.    Paragraphs 1 through 44, 46 and 47 are incorporated herein.

101.    On January 4, 2016, John Doe 4 was in a conference meeting on the second floor of Darya Village when the vehicle-borne IED detonated, causing John Doe 4 to be thrown across the room.

102.    Due to the blast, John Doe 4 experienced hearing loss and a traumatic brain injury.

103.    Soon after the explosion, John Doe 4 also began experiencing headaches, ringing in the ears and swelling to the back of his head.

104.    Upon John Doe 4's return to the United States, he was diagnosed with tinnitus, short-term memory loss, post-blast exposure headaches, and traumatic brain injury.

105.    John Doe 4 was further diagnosed with post-traumatic stress disorder, insomnia, irritability, adjustment disorder with depressed mood, anxiety, mood swings, intrusive memories, nightmares, marked startled response, and depression.

106.    As a result of the explosion, John Doe 4 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

107.    Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 4's person, property, and business.

108.    Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors,

including Plaintiffs, constitutes acts of international terrorism that caused substantial

injury to persons, property and business to Plaintiffs.

109.    Defendants' activities involved violent and dangerous acts to human life that were, and

are, a violation of the criminal laws of the United States or of any State.

110.    Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian

population, to influence policy of the U.S. Government by intimidation or coercion, and to affect

the conduct of a government by mass destruction and assassination.

111.    Defendants' activities occurred outside the territorial jurisdiction of the United States and

transcended international boundaries.

112.    Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. §

2331 and § 2333.

113.    Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and

"terrorist activity" under 18. U.S.C. § 2339.

114.    As terrorist organizations, or as members of a terrorist organization and criminal

conspiracy, defendants are all terrorist parties who proximately caused the injuries described

herein and are all jointly and severally liable for the terrorist acts, including acts of international

terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of

international terror, engaging in a joint single enterprise to conduct international terrorism

through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 4, demands judgment in his favor against all

defendants, jointly and severally, for his past and future mental pain and suffering, anguish,

emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages

under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

**COUNT FIVE**
**(John Doe 5 against all Defendants)**
**18 U.S.C. § 2333**

115.    Paragraphs 1 through 44, 46 and 47 are incorporated herein.

116.    On January 4, 2016, John Doe 5 was working in a second-floor conference room at Darya Village when the vehicle-borne IED detonated.

117.    As a result of the massive explosion, John Doe 5 began experiencing persistent ringing in the ears, his right pupil became deformed and irregular, and glass was embedded into both his hands.

118.    John Doe 5 experienced sudden vision loss and hearing loss. He had a cataract extraction and shrapnel removed from his eye.

119.    Days after the explosion, John Doe 5 was sent back to the United States for immediate medical treatment.

120.    Upon his arrival to the United States, John Doe 5 was diagnosed with a traumatic brain injury, post-concussion syndrome, constant bilateral temporal headache, post-blast exposure headaches, vision loss in the right eye, blurred vision, long standing iritis, dizziness, insomnia, hearing loss,  tinnitus, bilateral otogenic vertigo, sensorineural hearing loss, and visual disturbances.

121.    Additionally, John Doe 5 suffers from anxiety-based balance responses that are associated with the trauma he experienced, chronic post-traumatic stress disorder, disturbing dreams during sleep, anger issues, and depression.

122.    As a result of the explosion, John Doe 5 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

123.    Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 5's person, property, and business.

124.    Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

125.    Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

126.    Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

127.    Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

128.    Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

129.    Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

130.    As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described

herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 5, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

**COUNT SIX**
**(John Doe 6 against all Defendants)**
**18 U.S.C. § 2333**

131.    Paragraphs 1 through 44, 46 and 47 are incorporated herein.

132.    On January 4, 2016, John Doe 6 was sitting on the floor of a meeting room located in the second floor of Darya Village. John Doe 6 was attending a debriefing when the vehicle-borne IED detonated.

133.    The massive explosion caused John Doe 6 to fly through the air and hit his head on a concrete surface, causing him to suffer from a traumatic brain injury.

134.    Once in a safe room, John Doe 6 had to pull glass fragments from his ears and left side of his face. He began experiencing excruciating pain in his head, right shoulder and neck.

135.    John Doe 6 also experienced ringing in the ears and sharp pain.

136.    While overseas, John Doe 6 was diagnosed with post concussive syndrome, right sided cervical radiculopathy, and acute anxiety. Due to John Doe 6's unfitness for any duty involving firearms, he was sent home by his employer to seek treatment in the United States.

137.    Upon his arrival to the United States, John Doe 6 was further diagnosed with severe degeneration and severe neuroforaminal stenosis of his cervical spine, post concussive headaches, balance impairment, cognitive deficits, loss of sense of smell associated with traumatic brain injury, cervical myofascial pain syndrome with cervical radiculopathy, and a right shoulder sprain.  He also suffers from tinnitus and has been prescribed hearing aids.

138.    John Doe 6 was also diagnosed with post-traumatic stress disorder, panic attacks, insomnia, adjustment disorder with depressed mood, and neurocognitive disorder due to a traumatic brain injury.

139.    As a result of the explosion, John Doe 6 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

140.    Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 6's person, property, and business.

141.    Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

142.    Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

143.    Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

144.    Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

145.    Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

146.    Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

147.    As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 6, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

## COUNT SEVEN
### (John Doe 7 against all Defendants)
### 18 U.S.C. § 2333

148.    Paragraphs 1 through 44, 46 and 47 are incorporated herein.

149.    On January 4, 2016, John Doe 7 was in the second-floor meeting room at Darya Village attending a conference when the vehicle-borne IED detonated, causing John Doe 7 to be struck in the head by a piece the window hardware and lose consciousness.

150.    In addition, John Doe 7 sustained injuries to his left wrist, neck, back, shoulder, and head.

151.    John Doe 7 was initially diagnosed with posttraumatic migraine headaches, insomnia, tinnitus, hearing loss, post concussive syndrome and acute anxiety disorder.

152.    Due to his psychiatric issues, John Doe 7 was returned to the United States for treatment.

153.    Upon his return to the United States, John Doe 7 was further diagnosed with post-traumatic stress disorder, bilateral high frequency sensorimotor hearing loss, tinnitus, post-traumatic headaches superimposed upon a cerebral blast concussion, nightmares, repeated distressing memories, and flashbacks as a result of the bomb blast.

154.    Due to his diagnosis, John Doe 7 is no longer allowed to work in stressful environments, including but not limited to, work overseas or within the United States as a security contractor, or any other job involving customer interaction.

155.    As a result of the explosion, John Doe 7 has been left with severe limitations and restrictions precluding him from performing the job duties to which he is accustomed.

156.    Defendants, acting in concert with each other, attacked Camp Sullivan and Darya Village, constituting an act of international terrorism and causing substantial injuries to John Doe 7's person, property, and business.

157.    Defendant Taliban's material support and assistance to Defendants Haqqani Network and Al-Qaeda, as well as its provision of a safe haven and base of operations in Afghanistan from which they carried out their terrorist attack on U.S. civilian contractors, including Plaintiffs, constitutes acts of international terrorism that caused substantial injury to persons, property and business to Plaintiffs.

158.    Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

159.     Defendants' acts were intended to intimidate or coerce the Afghan and U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by mass destruction and assassination.

160.     Defendants' activities occurred outside the territorial jurisdiction of the United States and transcended international boundaries.

161.     Defendants' acts are therefore acts of international terrorism as defined by 18 U.S.C. § 2331 and § 2333.

162.     Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18. U.S.C. § 2339.

163.     As terrorist organizations, or as members of a terrorist organization and criminal conspiracy, defendants are all terrorist parties who proximately caused the injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

WHEREFORE, Plaintiff, John Doe 7, demands judgment in his favor against all defendants, jointly and severally, for his past and future mental pain and suffering, anguish, emotional distress, disability, loss of capacity for the enjoyment of life, including treble damages under 18 U.S.C. § 2333, plus interest costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate Plaintiff.

## COUNT EIGHT
### (John Does 1 through 7 against all Defendants)
### 18 U.S.C. § 1961 *et seq.*

164.    Paragraphs 1 through 47, 48 through 56, 66 through 74, 84 through 91, 101 through 106, 116 through 122, 132 through 139, and 149 through 155 are incorporated herein.

165.    The Taliban, Al-Qaeda, and the Haqqani Network engaged in an international criminal conspiracy referenced herein as "the International Conspiracy."

166.    Defendants are enterprises engaged in interstate and foreign commerce.

167.    Defendants are engaged in interstate and foreign acts of commerce and the acts alleged herein have a potential effect on commerce.

168.    Over a period of years, Defendants, with joint venturers, co-conspirators or agents, in violation of 18 U.S.C. § 1962(b), through a pattern of racketeering activity, have acquired or maintained an interest in or control of the International Conspiracy, which are engaged in or affect interstate commerce and foreign commerce.

169.    Over a period of years, Defendants, with joint venturers, co-conspirators or agents, in violation of 18 U.S.C. § 1962(c) and (d), conspired to and did conduct the affairs of the International Conspiracy through a pattern of racketeering activities.

170.     Over a period of years, Defendants, with joint venturers, co-conspirators or agents, conducted or participated directly or indirectly in the conduct of the partnership joint venture through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. §1962(c).

171.    In particular, the conduct of Defendants, with joint venturers, co-conspirators or agents, in threatening to murder Plaintiffs, constitutes racketeering activity according to 18 U.S.C. § 1961(1)(A).

172.    The conduct of Defendants, with joint venturers, co-conspirators or agents, in committing arson against Plaintiffs and their property constitutes racketeering activity according to 18 U.S.C. § 1961(1)(A).

173.    The conduct of Defendants, with joint venturers, co-conspirators or agents, in forcing individuals to surrender a ransom and in forcing others to do their bidding through fear, intimidation, and threats of violence, constitutes a pattern of extortion, which is enumerated as one of the racketeering activities in both 18 U.S.C. § 1961(1)(A) and 18 U.S.C. § 1961 (1)(B) and specifically its reference to 18 U.S.C. § 1951, otherwise known as the Hobbs Act.

174.    The conduct of Defendants, with joint venturers, co-conspirators or agents, in interfering with Plaintiffs' employment through fear, intimidation, threats of violence, and violence, constitutes a pattern of extortion, referenced in 18 U.S.C. § 1951, otherwise known as the Hobbs Act.

175.    Further, the conduct of Defendants, with joint venturers, co-conspirators or agents, in Dealing in controlled substances or listed chemicals under the Controlled Substances Act, constitutes racketeering activity according to 18 U.S.C. § 1961(1)(A).

176.    By virtue of the predicate acts described in this Complaint, including without limitations: engaging in predicate acts of terrorism, engaging in terrorism, murder, laundering of monetary instruments, engaging in monetary transactions improperly derived from unlawful activity, Defendants transferred, received, and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing and operating terrorist enterprises in violation of 18 U.S.C. § 1962(a).

177.    As a direct and proximate result of Defendants' violation of 1962(a), Plaintiffs suffered, the loss of valuable property, wages, and other pecuniary damages.

178.    By reason of the wrongful conduct of Defendants, each and every one of them, jointly and severally, Plaintiffs suffered conscious pain, suffering, severe emotional distress, anguish, and other mental and physical injuries, as well as have suffered pecuniary and economic damage.

WHEREFORE, Plaintiffs, John Does 1 through 7, demand judgment in their favor against all defendants, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorney's fees, pre-judgment interest, post-judgment interest, costs, and such other relies as this Honorable Court may deem just and proper.

Dated: March 20, 2020

Respectfully submitted,

**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601


By:    s/ *John Thornton*
       John Thornton
       Florida Bar No. 004820
       jt@dandtlaw.com

JS 44 (Rev. 09/19)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| John Does 1 through 7 | The Taliban, Al-Qaeda, and The Haqqani Network |

| **(b)**  County of Residence of First Listed Plaintiff    Tarrant | County of Residence of First Listed Defendant    Foreign |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| do Campo & Thornton, P.A.<br>150 SE 2nd Ave, Suite 602, Miami, FL 33131 | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☒ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>     & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>     Student Loans<br>     (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>     of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>     Liability<br>☐ 320 Assault, Libel &<br>     Slander<br>☐ 330 Federal Employers'<br>     Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>     Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>     Product Liability<br>☐ 360 Other Personal<br>     Injury<br>☐ 362 Personal Injury -<br>     Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury  -<br>     Product Liability<br>☐ 367 Health Care/<br>     Pharmaceutical<br>     Personal Injury<br>     Product Liability<br>☐ 368 Asbestos Personal<br>     Injury Product<br>     Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>     Property Damage<br>☐ 385 Property Damage<br>     Product Liability | ☐ 625 Drug Related Seizure<br>     of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>     28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>     New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>     3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>     Corrupt Organizations<br>☐ 480 Consumer Credit<br>     (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>     Protection Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>     Exchange |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>     Accommodations<br>☐ 445 Amer. w/Disabilities -<br>     Employment<br>☐ 446 Amer. w/Disabilities -<br>     Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>     Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>     Conditions of<br>     Confinement | ☐ 710 Fair Labor Standards<br>     Act<br>☐ 720 Labor/Management<br>     Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>     Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>     Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>     or Defendant)<br>☐ 871 IRS—Third Party<br>     26 USC 7609 | ☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>     Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>     Act/Review or Appeal of<br>     Agency Decision<br>☐ 950 Constitutionality of<br>     State Statutes |
| | | **IMMIGRATION**<br>☒ 462 Naturalization Application<br>☐ 465 Other Immigration<br>     Actions | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒1   Original
      Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1961, 18 U.S.C. §2333
Brief description of cause:
Civil action for damages arising from Acts of International Terrorism

| **VII. REQUESTED IN COMPLAINT:** | ☐  CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**    ☐ Yes   ☒No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE<br>03/20/2020 | SIGNATURE OF ATTORNEY OF RECORD<br>s/John A. Thornton |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #                  AMOUNT                  APPLYING IFP                  JUDGE                  MAG. JUDGE