# EXHIBIT A

**do Campo & Thornton, P.A.**                                   ATTORNEYS AT LAW

CHASE BANK BUILDING
150 S.E. SECOND AVENUE • SUITE 602
MIAMI, FLORIDA 33131
PH 305 358 6600 • FAX 358 6601
DANDTLAW.COM

July 21, 2023

**VIA ECF**
The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square – Courtroom 705
New York, NY 10007

Re:   *Bank of America, N.A., v. John Does 1 Through 7, et al.*, Case No. 1:23-cv-03604

Dear Judge Gardephe:

Pursuant to Your Honor's Memo Endorsed Order of July 17, 2023, John Does 1 through 7 ("Does"), submit this pre-motion letter outlining the bases of their proposed motion to dismiss this matter, or in the alternative, stay it in favor of a prior-filed action.

A.  This case is duplicative and seeks to usurp a previously filed action.

Does were civilian contractors working for the U.S. Government in Afghanistan in 2016. They were injured in a suicide bomb attack perpetrated by the Taliban and its co-conspirators, sued, and now hold a judgment against the Taliban for that attack.

On March 20, 2023, Does initiated execution proceedings in the United States District Court for the Western District of North Carolina ("WDNC") against Garnishee Bank of America, N.A. ("BANA") by seeking an writ of execution against a blocked account it holds, pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610, note ("TRIA"). *See John Does 1-7 v. The Taliban, et al. and Bank of America, Garnishee*, Case No. 4:20-cv-00605 in the Western District of North Carolina (the "WDNC action"), Dkt. 15. Does initiated the execution proceedings in the WDNC, where, in early 2022, BANA compliance personnel, responding to Treasury sanctions, took control of a correspondent account opened by VTB Bank Europe SE ("VTBE"), sent VTBE a termination letter closing that account (*see* Ex. A), and transferred the money from it into a newly-opened blocked account (*see* Ex. B); where BANA maintains that blocked account; and where Does had once before, and successfully, proceeded against a similar blocked account that BANA compliance personnel had similarly created by transferring funds that were outside of North Carolina into a blocked account.[1] (*See* WDNC action Dkt. 14) (a TRIA execution in the same matter number.)

---

[1] It is common for banks to block assets and then create blocked accounts where their OFAC compliance personnel work. *See eg. Est. of Levin v. Wells Fargo Bank, N.A.*, 45

The WDNC action has advanced substantially. That court has made a preliminary finding, subject to further proof, that VTBE "is an agency or instrumentality of the Taliban", thus subjecting its blocked assets to TRIA execution by the Taliban's victims. (WDNC Dkt. 16).[2] The Western District of North Carolina issued a Writ of Execution against VTBE's blocked assets (WDNC action Dkt. 17); the U.S. Marshal for the Western District of North Carolina served the writ on BANA with an appendix specifically instructing BANA to "restrain … account[] 5359064158 …" ("Blocked Account 4158") (*see* Composite Ex. C at 5); and BANA responded to the U.S. Marshal in that jurisdiction, and by doing so indicated that the WDNC writ restrains the account and that it does not object to the WDNC execution proceedings. *Id*. at 1-5.[3] Does provided the required notice of the WDNC proceedings to VTBE (WDNC action Dkt. 18); Does moved for turnover of the blocked assets (WDNC action Dkt. 20); VTBE moved to intervene in that action (WDNC action Dkt. 21); and Does consented to that intervention (WDNC action Dkt. 31-1).

The instant interpleader action (the "SDNY action") hopes to determine the exact issues that had been already raised in the WDNC action before the interpleader was filed—whether Does may satisfy their judgment by executing against the blocked assets of VTBE. *See* SDNY action, Dkt. 1, pgs. 10-14 (complaint seeking judicial determination of whether the requirements of TRIA have been met and whether there are any defenses).

According to BANA, when it filed the SDNY action, it was unaware whether VTBE "would appear or object to jurisdiction in the WDNC". SDNY Dkt. 23, p. 2. BANA feared that one day VTBE would sue and argue that BANA should not have complied with a turnover order from the WDNC. This fear was unfounded, as the only necessary party to a TRIA execution, other than the judgment creditor, is the holder of the blocked asset, *i.e.* the garnishee, who is ordered to turn over the tainted funds that TRIA makes available to satisfy the judgment. *See Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46, 48-50 (S.D.N.Y. 2018) (no jurisdiction over Sudan's central bank was required to order turnover under TRIA of the central bank's assets deposited at a New York bank); *RCA Corp. v.Tucker*, 696 F. Supp. 845, 850 (E.D.N.Y. 1988) (judgment debtor is "not a necessary party to the proceeding" for turnover); Siegel, N.Y. Prac. § 510 (6th ed. 2022) (turnover orders are judgments running directly against the

---

F.4th 416, 418 (D.C. Cir. 2022) ("After blocking the transfer, Wells Fargo placed the funds in an account in South Dakota, as the bank apparently does with all blocked assets.").

[2] Does contend that the Russian Government uses VTBE's parent, and VTBE, to fund destabilizing activities, including financing the Taliban, and that the Taliban relies on this material support to carry out terrorist attacks. As is related in the Complaint, Does presented evidence of their contention to the WDNC before it made its preliminary finding and issued its writ. (SDNY action, Dkt. 1, par. 37; WDNC action, Dkt. 15). When Does moved for turnover, they buttressed these allegations with expert testimony. (SDNY action, Dkt. 1, par. 40; WDNC action Dkt. 20).

[3] BANA's counsel had prior informed counsel for Does that BANA would not object to TRIA proceedings in the WDNC.

2

garnishee). In fact, TRIA executions usually proceed without personal jurisdiction ever being established over the alleged terrorist instrumentality.

Rather, the owner of the blocked assets is provided the notice that is required by the applicable state execution statute, and is given the opportunity to be heard; that is all that is required so long as that state's notice requirements comport with due process. The fact that VTBE received actual notice and has appeared in the WDNC has obviated any possibility that it could complain about the sufficiency of the notice required in North Carolina law—the fact that a party whose assets are subject to TRIA execution has "received actual notice and appeared" shows that the notice was adequate such that due process is satisfied. *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 741 (11th Cir. 2014) citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S. Ct. 1367, 1380 (2010).

VTBE, hopes to use the fact that the interpleader was filed to derail the more advanced proceedings in North Carolina. It intends to ask this court to ignore the fact that the WDNC is already exercising jurisdiction over the blocked assets; to usurp the WDNC's consideration of the question of venue and make a declaratory judgment that this court is the proper venue (and presumably that the WDNC is not); and then determine the substantive questions pending in the WDNC. *See* SDNY Dkt. 23, pg. 5.

B.  At a minimum, this matter should be stayed.

"Generally, 'where there are two competing lawsuits, the first suit should have priority.'" *Readick v. Avis Budget Grp., Inc.*, 2014 U.S. Dist. LEXIS 58784, at *4-5 (S.D.N.Y. Apr. 25, 2014) (Gardephe, J.) (quoting *Ft. Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986)).

More importantly, concerning the "antecedent question" of "*which court* should decide where the case should proceed", "the courts of this district have adopted a 'bright-line rule' that '[t]he court before which the first-filed action was brought determines which forum will hear the case.' *Berkley Assurance Co. v. Macdonald-Miller Facility Sols.*, No. 19-CV-7627 (JPO), 2019 U.S. Dist. LEXIS 217761, at *8 (S.D.N.Y. Dec. 16, 2019) quoting *MSK Ins. v. Emplrs Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) (emphasis in original). Further, "'[T]his bright-line rule . . . does not provide for any special exceptions. It is a straight-forward rule to be applied in a rote manner.'" *Id.* at *8-9 (S.D.N.Y. Dec. 16, 2019) (quoting *Pem Am., Inc. v. Lambert*, No. 03-CV-3706, 2003 U.S. Dist. LEXIS 18511, 2003 WL 22383369, at *2 (S.D.N.Y. Oct. 17, 2003)). Further, that a party argues that there is a forum selection clause that dictates venue matters not; for "[l]itigants who believe that a forum selection clause governs an action brought in an alternative forum should first seek to resolve the venue issue in the first-filed forum, absent exceptional circumstances." *Comcast Corp. v. Rovi Corp.*, No. 16-CV-3852 (JPO), 2016 U.S. Dist. LEXIS 128948, at *9 (S.D.N.Y. Sep. 16, 2016).[4]

---

[4] The venue selection clause also has no impact for multiple reasons. **First**, Does need not sue VTBE in the WDNC to execute against its blocked assets; personal jurisdiction over

Thus, this Court should, at a minimum, stay this action until the Western District of North Carolina determines all the issues before it, but especially whether it is the proper venue and whether the case should proceed there. Even the *Plaintiff* in this action, BANA, recognizes this. It has already represented to this Court that it "is willing to hold these proceedings in abeyance pending the WDNC's decision on the Turnover Motion and the Motion to Intervene." SDNY Action, Dkt. 23, pg. 2. Finally, this action, which was brought to safeguard BANA from an eventual judgment issued by the WDNC, simply has no *raison d'être* until that judgment is issued. If it does not issue, this entire proceeding will prove to have been a waste of time. That alone calls for a stay.

    C.  This action should be dismissed.

As shown above, the first-filed rule dictates that this Court stay this action at a minimum until the WDNC hears any challenge to its venue. The first-filed rule also can properly be invoked to dismiss the action altogether. *See Burke v. Bimbo Bakeries USA, Inc.*, No. 19-CV-11101 (PMH), 2020 U.S. Dist. LEXIS 141096, at *5 (S.D.N.Y. Aug. 6,

---

it is not required. **Second**, Does are not attempting to collect against the correspondent banking account numbered 6801. By March 17, 2022, BANA personnel in Charlotte, North Carolina had taken control of that account, and on that date, sent VTBE a letter, from Charlotte, North Carolina, informing VTBE that BANA was closing account 6801. *See* Ex. A. On March 18, 2022 BANA personnel in Charlotte, North Carolina reported to the Government, that "**BANA transferred the full balance of $75,062,862.10 from client account [\*\*\*\*\*\*]6801 to blocked account 5359064158** …". Ex. B. Does seek to execute against BANA Blocked Account 4158, which contains VTBE's assets, but is not VTBE's account. (BANA's allegation that Does seek an account or assets located in New York is false; BANA identified only Blocked Account 4158 to Does (and not account 6801), and the U.S. Marshal served BANA a writ restraining Blocked Account 4158). **Third**, Does are not parties to any contracts with either BANA or VTBE; whatever BANA and VTBE agreed to does not dictate where Does can initiate a TRIA execution that does not even name VTBE and does not concern the former account. **Fourth**, because the former account no longer exists, the instant suit by BANA against VTBE should have been brought by BANA (if brought at all) not where the former account was, but where the Blocked Account is at the time it filed suit—North Carolina. **Alternatively**, assuming that the forum selection clause somehow applies, it provides that venue changes: it states that suit "must be brought in the state where we opened *or, if different, currently maintain* your account; and you submit to the personal jurisdiction of that state.'". *See* SDNY action, Dkt. 1 par. 12 (emphasis added). "That state" has been North Carolina since at least March 2022 for both accounts 6801, which was taken over and closed by personnel in North Carolina at that time, and 4158, which was opened by personnel in North Carolina and has been maintained there ever since. Nothing has been maintained in New York since. Thus, there was no need or basis for BANA to sue in New York at all. If BANA sues and serves it with a WDNC summons, the WDNC will have personal jurisdiction over VTBE based on the submission to jurisdiction in the forum selection clause. Additionally, the WDNC can exercise *quasi in rem* jurisdiction over VTBE in an execution against those assets.

2020) ("Under the first-filed rule, dismissal of a second-filed action may be appropriate ...".) (citations and quotations omitted).

Here, dismissal is mandated. The WDNC has already exercised jurisdiction over the blocked assets in Blocked Account 4158. It issued a Writ of Execution against the assets of VTBE (WDNC action Dkt. 17), and the U.S. Marshal served that Writ of Execution on BANA specifically restraining Blocked Account 4158. *See* Composite Exhibit C at 5. BANA responded to the Marshal indicating that BANA considered Blocked Account 4158 restrained by the writ but that it could not release the assets due to the block absence a license or TRIA judgment. *Id*. at 1-5. This circumstance makes the first-filed rule absolute, precluding this Court from exercising jurisdiction. As the Supreme Court has held, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466-67, 59 S. Ct. 275, 83 L. Ed. 285 (1939); Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed., Oct. 2020) ("[W]hen a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court.") (collecting citations). *Hammer v. Dep't of Health & Hum. Servs*., 905 F.3d 517, 536 (7th Cir. 2018) ("[T]wo suits, both of which are *in rem* or *quasi in rem* and require the courts to have possession or control of the same property, cannot proceed at the same time, and the second court must yield to the first."). Here, the WDNY obtained control of Blocked Account 4158 through the Writ of Execution, and any TRIA execution will require the court implementing it to exercise control over the assets in Blocked Account 4158. Thus, this Court cannot exercise jurisdiction.

Does also will move to dismiss this action against them for lack of personal jurisdiction. None of them has sufficient contacts to New York to support general jurisdiction over them, and by bringing an action against Blocked Account 4158 in the WDNC, they did not submit to the jurisdiction of this Court.

The only reason for this case not to be dismissed in its entirety would be so that BANA may amend and sue VTBE only for a declaratory judgment that BANA owes it no duty, contractual or otherwise, if BANA complies with an eventual turnover order from the WDNC. That might force VTBE to make any defense to the execution of its assets where they are subject to a Writ of Execution: the Western District of North Carolina.

John Does 1-7 and their counsel appreciate the Court's time and consideration of this matter.

Sincerely,

s/*John Thornton*
John Thornton *(pro hac vice)*
Orlando do Campo
do Campo & Thornton, P.A.

150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
jt@dandtlaw.com

6